United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RENE PASCUAL MUNOZ,   )   No. C 04-1000 MMC (PR)
                     )
    Plaintiff,       )   **ORDER DENYING MOTIONS TO**
                     )   **DISMISS AND TO STRIKE;**
  v.                 )   **DIRECTING DEFENDANT TO FILE**
                     )   **MOTION FOR SUMMARY**
                     )   **JUDGMENT OR, ALTERNATIVELY,**
JOE McGRATH, Warden, )   **NOTICE THAT SUCH MOTION IS**
                     )   **NOT WARRANTED**
    Defendant.       )
                     )   (Docket Nos. 7 & 9)
_____ )

Plaintiff, a California prisoner currently incarcerated at Pelican Bay State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights complaint pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that defendant Joe McGrath, the PBSP Warden, placed him and the other Southern Hispanic inmates at PBSP on "lock-down" status based on their ethnicity. The Court, having found these allegations, liberally construed, state a cognizable claim under the Equal Protection Clause, ordered the complaint served on defendant, and ordered defendant to file a dispositive motion or, alternatively, to indicate that such motion was not warranted in this case. Defendant has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with a request for judicial notice. Plaintiff has filed an opposition, to which defendant has filed a reply. Additionally, plaintiff has filed a motion to "strike" defendant's motion.

**DISCUSSION**

**A.   Standard of Review**

Rule 12(b)(6) provides for the dismissal of a claim "if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." See Neitzke v. Williams, 490 U.S. 319, 327 (1989). In considering a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Federal courts are particularly liberal in construing allegations made in pro se civil rights complaints. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). In ruling on a Rule 12(b)(6) motion, the court may not consider any material outside the complaint but may consider exhibits attached thereto. See Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d 912, 925 (9th Cir. 2001); Fed. R. Civ. P. 10(c) (treating exhibits attached to complaint as part of complaint for purposes of ruling on 12(b)(6) motion).

**B.   Factual Background**

In connection with this motion, the Court limits itself to consideration of the following facts, which are alleged in the complaint and the attachments thereto. On February 23, 2000, defendant placed plaintiff and all other Southern Hispanic inmates at PBSP on "lock-down," where plaintiff remained as of the date he prepared the complaint (March 11, 2004). As a consequence of being on lock-down, plaintiff was deprived of exercise, visitation, the opportunity to earn behavioral credits, and other programs to which he would otherwise be entitled. Plaintiff was among other Southern Hispanic inmates who filed petitions for a writ of habeas corpus in the Del Norte County Superior Court, challenging the constitutionality of the lock-down order. The petitions were consolidated, and the state Superior Court ruled in favor of the inmates in 2002. In February 2004, the California Court of Appeal affirmed the judgment of the Superior Court, finding that the lock-down of Southern Hispanic inmates based on their ethnicity was an instance of racial discrimination in violation of the Equal Protection Clause. In the state habeas petition, plaintiff sought injunctive relief. Here, plaintiff seeks money damages for the time he was on lock-down.

2

C.  **Legal Analysis**

Defendant moves to dismiss the complaint on the basis of qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and then determine whether that right was "clearly established." Wilson v. Layne, 526 U. S. 603 (1999); Conn v. Gabbert, 526 U.S. 286, 290 (1999). The initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the state official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. On the other hand, if a violation could be made out on the allegations, the next sequential step is to ask whether the right was clearly established. Id.

Under the foregoing framework, the Court must first resolve whether, under the facts alleged by plaintiff, locking down plaintiff based on his Southern Hispanic ethnicity was unconstitutional. Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within prisons. Johnson v. California, 125 S. Ct. 1141, 1146-47 (2005).[1] A prison classification based on race is immediately suspect and is subject to the same strict scrutiny as a racial classification outside prison. See id. at 1148-49. Prison officials thus must demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest. Id. at 1149. Here, plaintiff alleges no facts that demonstrate the race-based lock-down of only Southern Hispanic inmates was

---

[1] Although this Court views the alleged discrimination against Southern Hispanic inmates to be based on their ethnicity, as opposed to their "race," in Johnson, the United States Supreme Court treated such discrimination as equivalent to "racial" discrimination for purposes of equal protection analysis. 125 S.Ct. at 1145-48 (discussing whether segregated housing of Southern Hispanic inmates, as well as inmates of other racial and ethnic groups, violates the Equal Protection Clause).

3

1 narrowly tailored to serve a compelling state interest.  Indeed, defendant does not assert in his
2 motion that the lock-down, as alleged by plaintiff, was constitutional.  Rather, defendant bases
3 his qualified immunity argument entirely on the second part of the Saucier analysis, arguing
4 that the constitutional right was not "clearly established."

5 "The relevant, dispositive inquiry in determining whether a right is clearly established
6 for purposes of qualified immunity is whether it would be clear to a reasonable state official
7 that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  If the
8 law did not put the official on notice "that his conduct would be clearly unlawful," the official
9 is entitled to qualified immunity.  See id.  In the instant case, defendant argues that, in the
10 period from February 2000 to March 2004, it would not have been clear to a reasonable prison
11 official that the lock-down of plaintiff based on his Southern Hispanic ethnicity was
12 unconstitutional.  At that time, race-based classifications of inmates were subject to a more
13 lenient standard than the strict scrutiny standard announced in Johnson in 2005.  Prior to
14 Johnson, a prison regulation segregating inmates on the basis of their race or ethnicity only had
15 to be "reasonably related to legitimate penological interests."  See Turner v. Safley, 482 U.S.
16 78, 89 (1987); see also Johnson v. California, 321 F.3d 791, 799 (9th Cir. 2003), overruled by
17 Johnson v. California , 125. S.Ct. 1141, 1161 (2005) (finding Turner standard does not apply
18 to racial classifications in prison).  Consequently, in the instant case, to satisfy the "clearly
19 established" prong of the qualified immunity analysis, defendant would have to show that a
20 prison official could have reasonably believed, under the circumstances pertaining at PBSP
21 between February 2000 and March 2004, that locking down plaintiff due to his Southern
22 Hispanic ethnicity was reasonably related to a legitimate penological interest.

23 Defendant argues that at the time in question, he could have reasonably believed that
24 locking down Southern Hispanic inmates, including plaintiff, was reasonably related to prison
25 security.  In support of this argument, defendant points to various factual findings made by
26 California trial and appellate courts.  In particular, findings have been made that there are gangs
27 in the California prisons, and at PBSP in particular, which gangs are formed on the basis of the
28 race and ethnicity of the inmates; that these gangs have a history of violent clashes and riots in

the prisons; that a particular gang known as the "Mexican Mafia" or "EME," which is made up of Sourthern Hispanic inmates, is the most dangerous and powerful of the prison gangs at PBSP, and is particularly effective at intimidating Southern Hispanic inmates into joining the gang; that the lock-down of Southern Hispanic inmates in February 2000 was ordered after Southern Hispanic gangs participated in a riot with other PBSP gangs; that in January 2001, defendant nonetheless implemented a policy that abolished racially segregated housing at PBSP, under which the lock-down of Southern Hispanic inmates would be lifted; and that the policy was not implemented before March 2004 because of a lack of resources required to evaluate the security risks of individual inmates.

These factual findings by the state courts are not facts alleged by plaintiff in the complaint.[2] Although the Court, in ruling on a Rule 12(b)(6) motion, may also consider facts that are properly the subject of judicial notice under Rule 201 of the Federal Rules of Evidence, see MGIC Indemnity Corp. V. Weisman, 803 F.2d 500, 503 (9th Cir. 1986), such as the existence and content of the court files in another case, the Court may not take judicial notice of the truth of the factual findings made by such other court, because such facts do not qualify as facts "not subject to reasonable dispute" within the meaning of Rule 201(b). See Taylor v. Charter Medical Corp., 162 F.3d 827, 829-30 (5th Cir. 1998). Consequently, this Court can take judicial notice of the fact that the state courts made the factual findings cited by defendant, but it cannot take judicial notice that these facts are true. Cf. Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (taking judicial notice of fact that prior court had made certain findings, for purpose of analyzing defense of res judicata raised in Rule 12(b)(6) motion). Accordingly, to whatever extent locking down plaintiff was based on the history of racial tensions at PBSP, the particular dangers posed by Southern Hispanic gangs, or the lack of resources to alter the lock-down practice sooner, the Court cannot consider such facts at this stage of the litigation.

In sum, because a review of the facts alleged in the complaint reveals no rationale for

---

[2] Although the state court opinions are attached to the complaint, plaintiff does not allege that the factual findings contained in those opinions are true.

5

1 the lock-down, let alone any legitimate penological interest reasonably served thereby, and
2 because defendant could not reasonably have believed he could lawfully single out inmates
3 based on their Southern Hispanic ethnicity for no legitimate penological interest, the instant
4 complaint, when the Court considers only the facts alleged in the complaint and of which
5 judicial notice can be taken, is not subject to dismissal pursuant to Rule 12(b)(6).

**D.     Motion to Strike**

Plaintiff asks the Court to "strike" defendant's motion because it was filed after the deadline set forth in the Court's Order of Service filed May 19, 2004. Plaintiff made the same argument in his previously-filed motion for default judgment. In an order filed November 1, 2004, the Court denied that motion because defendant's delay in filing a dispositive motion was attributable to delays in service of the complaint and the Order of Service. For the same reason, plaintiff's motion to strike likewise is denied.

**CONCLUSION**

For the foregoing reasons,

1. Defendant's motion to dismiss is DENIED and plaintiff's motion to strike is DENIED.

2. In order to expedite the resolution of this case, the Court orders as follows:

a. No later than **sixty (60) days** from the date of this order, defendant shall file a motion for summary judgment or a notice that he is of the opinion that this case cannot be so resolved. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.

<u>Defendant is advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due</u>.

All papers filed with the Court shall be promptly served on the plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on defendant no later than **thirty (30) days** from the date defendant's motion

is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The [defendant has] made a motion for summary judgment by which [he seeks] to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendant[ ], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to defendant's motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir. 1994).

       c.     Defendant shall file a reply brief no later than **fifteen (15) days** after plaintiff's opposition is filed.

    d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

  3. Extensions of time are not favored, although reasonable extensions will be granted. Any motion for an extension of time must be filed no later than the deadline sought be extended.

This order terminates Docket Nos. 7 and 9.

IT IS SO ORDERED.

DATED: September 8, 2005

          _____
          MAXINE M. CHESNEY
          United States District Judge